**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 12 C 7288 |
| | ) |
| TONY CALLION, | ) Judge Rebecca R. Pallmeyer |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

On November 20, 2009, a federal jury convicted Petitioner Tony Callion of conspiracy to commit bank extortion (Count I) and attempted bank extortion (Count II) in violation of 18 U.S.C. § 371 and § 2113. The jury acquitted Callion of a third charge: that he used or brandished a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). At his sentencing hearing on March 5, 2010, Judge Coar of this court found by a preponderance of the evidence that the offenses involved the discharge of a firearm, and imposed a firearms enhancement to Callion's Federal Sentencing Guidelines calculation. The court sentenced Callion to the statutory maximum for Counts I and II, to run concurrently. Callion appealed, and the Seventh Circuit affirmed his conviction and sentence on June 28, 2011.

On September 4, 2012, Callion filed this petition pursuant to 28 U.S.C. § 2255, to vacate, set aside or correct his sentence. Callion argues that his attorney was ineffective because (1) counsel failed to object to jury instructions that contained language that differed from the indictment, and (2) the court imposed a "twenty-year mandatory minimum sentence required by § 924(c)(1)(A)(iii)." As an alternate ground for relief, in his reply, Callion argues that his convictions and sentences for conspiracy to commit bank extortion and attempted bank extortion violate the Double Jeopardy Clause. In addition to his § 2255 Petition, Callion has filed a motion to supplement the petition with the Supreme Court's recent holding in *Alleyne v. United States*, 133 S. Ct. 2151 (2013), decided on June 17, 2013. The Government contends that Callion has not

shown that his attorney was ineffective at sentencing; that his double jeopardy claim is procedurally defaulted and is meritless; and that because he was acquitted on the § 924(c) charge, he cannot establish ineffective assistance in connection with the jury instructions related to this charge. Callion's motion to supplement [7] is granted, but, for the reasons explained below, his § 2255 petition [1] is denied.

## BACKGROUND

On October 9, 2008, a grand jury returned a three-count indictment[1] against Tony Callion and five co-defendants, charging them with conspiracy to commit extortion of a federally-insured bank, in violation of 18 U.S.C. § 371 (Count I); attempted bank extortion, in violation of 18 U.S.C. § 2113(a) (Count II); and knowingly "us[ing], carr[ying], brandish[ing] and discharg[ing] firearms . . . during and in relation to a crime of violence" (the attempted bank extortion), in violation of 18 U.S.C. § 924(c)(1)(A) (Count III). (Indictment, *United States v. Callion*, No. 08-CR-549-1 (Oct. 9, 2008) [43].) Two of Callion's co-defendants, Daniel Gibbs and Natalie Hoisington, pleaded guilty and cooperated as witnesses, and Israel Collins and Sherman Swopes, two other co-defendants, also eventually pleaded guilty to Counts II and III. *United States v. Durham*, 645 F.3d 883, 890 (7th Cir. 2011). Callion and his co-defendant Hal Durham proceeded to separate jury trials, and both were convicted on Counts I and II. *Durham*, 645 F.3d at 888.

**I.     Trial**

The evidence presented at trial showed that as early as June 2008, Callion suggested to Daniel Gibbs, another co-defendant, that they kidnap Charles Zachary (Callion's cousin) because

---

[1] On October 13, 2009, the court granted the Government's motion "to amend nonsubstantive language and strike surplusage" from the indictment. (Gov't's Resp. to § 2255 Mem. [4] at 2). The substance of the amended indictment did not change. (Am. Indictment, Ex. A to Gov't's Mot. to Am. Indictment, *United States v. Callion*, No. 08-CR-549 (Sept. 21, 2009) [141], hereinafter "Am. Indictment.")

Zachary owed Callion drug money. *Durham*, 645 F.3d at 888. Then, at a Fourth of July barbeque at the home of Hal Durham (Gibbs's father), Callion and Gibbs again discussed their plan, including Durham and Natalie Hoisington (Gibbs's girlfriend) in the conversation. *Id.* During this conversation, Callion instructed Gibbs to purchase handcuffs and duct tape. *Id.* Five days later, on July 9, 2008, Callion called Gibbs to let him know that the intended kidnapping would take place that night. *Id.* Gibbs, Hoisington, Callion, and Durham all met at Durham's home; and Callion, Gibbs, and Hoisington left around midnight or 1:00 a.m. to locate Zachary, recruiting Israel Collins and Sherman Swopes to assist while they were out. All of the defendants, excluding Durham, waited at Zachary's home, and when he returned, Swopes and Collins abducted and handcuffed him, placed him in the back of the vehicle, and drove him, with the other participants, back to Durham's house. *Id.*

While Zachary was being moved into Durham's house, Gibbs accidentally discharged a shotgun shell into the vehicle's center console. *Id.* The kidnapers brought Zachary into the house, duct-taped him to a chair, and wrapped his eyes shut with duct tape. *Id.* The Seventh Circuit's opinion explained what happened next:

> Callion and Durham proceeded to use force to threaten and intimidate their hostage. Durham used an unloaded .22 caliber revolver to play "Russian Roulette" with Zachary, hit Zachary in the side of the head with the revolver, fired a gun loaded with .22 caliber low velocity power load ammunition at Zachary's leg, and briefly brought his pit bull into the room to scare Zachary. Callion pulled up on Zachary's toes with a wrench.

*Id.* at 888–89. Zachary told his captors that his girlfriend, Luella Dorenzo, worked at a TCF Bank and might be able to get money from the bank to satisfy them. *Id.* at 888. Callion arranged the ransom drop, and Durham picked up the money—$40,220 in ransom money in a TCF-labeled bag that also included a tracker device and "four $20 pre-recorded bait bills." *Id.* at 889. After returning to his home, Durham and the others began dividing the money, and were arrested shortly thereafter. *Id.* At trial, an FBI agent testified that when he interviewed Callion the morning

after the incident, Callion admitted that he had planned the kidnapping for ransom, and that he understood that Dorenzo had a key to the bank vault. *Id.*

The jury returned a verdict on November 20, 2009, finding Callion guilty of conspiracy to commit bank extortion (Count I) and attempted bank extortion (Count II). The jurors acquitted Callion of Count III, the charge of using, carrying, brandishing, and discharging a weapon during and in relation to the attempted bank extortion. *Id.* at 890.

**II.     Sentencing**

In the Presentence Investigation Report ("PSR"), the probation officer calculated Callion's base offense level, for conspiracy and attempted extortion, at 18, and then added points for specific offense characteristics, including a seven level increase for discharge of a firearm.[2] (Presentence Investigation Rep., *United States v. Callion*, No. 08-CR-549-1 (Apr. 7, 2010) [372], hereinafter "PSR," at 7–9); *see* U.S. SENTENCING GUIDELINES § 2X1.1; § 2B3.2(a); § 2B3.2(b)(3)(A)(i). With respect to the firearms enhancement, the probation officer identified the following incidents during which a firearm was used or discharged in the course attempted bank extortion: Callion was present when Gibbs accidentally discharged a shotgun in the vehicle and when Durham threatened the victim with a .22 caliber handgun; Callion observed Durham fire a .22 caliber handgun loaded with blanks "near [the victim's] leg;" and agents recovered a .38 caliber revolver from Durham's home where the ransom proceeds had been counted. (PSR at 6.) The enhancements brought Callion's total offense level to 38, and with a criminal history category of II, his guideline range was 262 to 327 months, capped at 300 months by the statutory maximums. (*Id.* at 9, 12.)

---

[2] The statutory maximum for Count I, conspiracy to commit bank extortion, is five years, 18 U.S.C. § 371, and the statutory maximum for Count II, attempted bank extortion, is twenty years. 18 U.S.C. § 2113(a). Callion thus faced a maximum sentence of 300 months—240 months for count 2 and 60 months for count 1 to run consecutively.

Callion's attorney, Laurence Bolon, identified several disputed facts, specifically relating to the use and discharge of a firearm, in his sentencing memorandum. (Def.'s Sentencing Mem., *United States v. Callion*, No. 08-CR-549-1 (Mar. 3, 2010) [314].) The probation officer's conclusion that Callion "observed" Durham fire blanks from a .22 caliber handgun near the victim's leg, Callion argued, was unsupported. (*Id.* ¶ 5.) The evidence presented at trial only "suggest[ed]" that Callion was in the house at the time, but there was "no evidence as to what Callion was specifically doing at the time the gun was discharged." (*Id.*) Attorney Bolon emphasized that Callion had been "acquitted of the use of any of the three firearms mentioned at the trial," and reasoned that the jury must have found that testimony concerning the use of firearms was not believable. (*Id.* ¶¶ 31, 38.) Counsel concluded that "the seven point enhancement is not factually supported by the evidence or the verdict of the jury" (i*d.* ¶ 39), and was fundamentally unfair because, had Callion been convicted of the firearm charge in Count III, his guideline range would have been less than that recommended by the probation officer with the firearms enhancement.[3]

---

[3] In his Sentencing Memorandum, Callion argued that the court should not apply the firearms enhancement (7 level increase) or the bodily injury enhancement (2 level increase), making his total offense level 29, and the guideline range 97 to 121 months. (Def.'s Sentencing Mem. ¶ 35.) Had Callion been convicted of discharging a firearm in relation to the attempted bank extortion, he would have been subject to a mandatory minimum sentence of ten years to run consecutive to the underlying sentence. *See* 18 U.S.C. § 924(c)(1)(A)(iii). In total, then, according to Callion, if convicted of Count III, his guideline range would have been just 217 to 241 months. (Def.'s Sentencing Mem. ¶ 40.) If Callion contends that a bodily injury enhancement would be precluded by a conviction on Count III, the court disagrees; there was evidence of injury to the victim that was unrelated to the discharge of a firearm. Nor does the court share Callion's apparent belief that, had he been convicted under § 924(c), the sentencing court would have been barred from considering the firearms discharges in calculating his sentence. Section 2K2.4 of the November 2009 Guidelines anticipates and addresses this issue: "In a few cases . . . the offense level for the underlying offense . . . may result in a guideline range that, when combined with the mandatory consecutive sentence under [18 U.S.C. § 924(c)], produces a total maximum penalty that is less than the maximum of the guideline range that would have resulted had there not been a count of conviction under [§ 924(c)] . . . . In such a case, an upward departure may be warranted so that the conviction under [§ 924(c)] does not result in a decrease in the total punishment." *See* U.S. SENTENCING GUIDELINES MANUAL § 2K2.4 cmt. n.4 (2009)).

The Government disputed Callion's assertion that there was no factual basis for the firearm enhancement, and significantly, argued that Callion's acquittal on Count III "is not relevant to this Court's finding that the enhancement applies." (Gov't's Resp. to Def.'s Sentencing Mem., *United States v. Callion*, No. 08-CR-549-1 (Mar. 3, 2010) [315] at 4–5.) The only inference that may be drawn from the jury's acquittal verdict was that the government failed to prove Callion guilty of Count III beyond a reasonable doubt. (*Id.* at 4.) For the firearms enhancement to apply, the Government argued, the judge need only find by a preponderance of the evidence that a firearm was discharged in relation to the attempted bank extortion, and the jury's acquittal of the more serious "use or brandishment" charge is irrelevant. (*Id.* at 4, 8) (citing *United States v. Watts*, 519 U.S. 148, 157 (1997); *United States v. Thomas*, 294 F.3d 899, 905 (7th Cir. 2002).) And here, the Government reasoned, Callion's sentence may be enhanced based on the discharge of firearms by his co-conspirators, Gibbs and Durham, because they were related to Callion's underlying conviction for attempted bank extortion and were reasonably foreseeable. (*Id.* at 6–7.) Finally, the Government denied that Callion would have received a lower guidelines range had he been convicted of Count III.[4]

At the sentencing hearing on March 5, 2010, Attorney Bolon again orally challenged the firearms enhancement, urging that "there's something fundamentally unfair" about finding, based on a preponderance of the evidence, that the defendant used a firearm in the commission of a crime (applying a lower burden of proof) at sentencing, after the jury has acquitted the defendant

---

[4] The Government reasons that with the firearms conviction, Callion's total offense level would have been 34, yielding a range of 168 to 210 months, in addition to the mandatory, ten-year (minimum) consecutive sentence under § 924(c)(1)(A)(iii), making Callion's total range 288 to 330 months. (Gov't's Resp. to Def.'s Sentencing Mem. at 7–8.) The Government has not explained these calculations, but the court presumes that that the Government has replaced the seven-level increase for discharge of a firearm under Section 2B3.2(b)(3)(A)(i), with a three-level increase under Section 2B3.2(b)(3)(B)(i)(III) because the underlying convictions involved kidnapping.

of the same charge at trial. (Sentencing Tr., Mar. 5, 2010, *United States v. Callion*, No. 08-CR-549-1 [346], at 13:9–23.)  The Government observed that the court is free to consider facts proven by a preponderance of the evidence at sentencing (*id.* at 16:5–11), and again challenged Callion's contention that he faced a higher sentence under the firearms enhancement than if he had been convicted and sentenced under § 924(c). (*Id.* at 16:14–24.)

Both sides agreed on certain other corrections to the probation officer's findings:  the prosecutor acknowledged that it was Gibbs, not Callion, who "observed Hal Durham fire a .22 caliber handgun, loaded with blanks, near [the victim's] leg," and that Gibbs, and not Callion, "was present when Hal Durham threatened [the victim] with a .22 caliber handgun." (*Id.* at 5:13–6:18.) They agreed, further, that Callion was on the first floor of the house when Durham discharged the .22 caliber gun. (*Id.* at 6:12–19.)

Over Callion's objections, the district court concluded that application of the firearm enhancement under section 2B3.2(b)(3)(A)(i) of the Guidelines was appropriate because the evidence presented at trial showed, by a preponderance, that a firearm had been discharged. (Sentencing Tr. 4:16–5:12.)  The court "credit[ed]" testimony that Durham discharged a .22 caliber handgun near the victim's leg in order to scare and coerce him, that Gibbs discharged the shotgun in the vehicle accidentally, and "that Mr. Callion was the one who wanted to have a big gun involved with the kidnapping." (*Id.* at 4:16–5:8.)  And, the court observed, "it was certainly foreseeable to [Callion] that guns would be used." (*Id.* at 5:12.)  The court sentenced Callion to the statutory maximum of 60 months for conspiracy to commit bank extortion, 18 U.S.C. § 371, and the statutory maximum of 240 months for attempt to commit bank extortion, 18 U.S.C. § 2113(a), to run concurrently, for a total of 240 months. (*Id.* at 23:9–14.)

### III.     Appeal

Callion filed a notice of appeal on March 17, 2010 (Notice of App., *United States v. Callion*, No. 08-CR-549-1 (Mar. 17, 2010) [347]), and, represented by attorneys Thomas L. Shriner and

Ruben J. Rodrigues, raised three issues: (1) the evidence was insufficient to support his convictions on Counts I and II; (2) at trial, the district court erred in responding to a jury question; and (3) the sentencing court erred in applying a two-level enhancement for bodily injury to "any victim" under section 2B3.2(b)(4)(A) of the Sentencing Guidelines. *Durham*, 645 F.3d at 888, 890, 893–94. The Seventh Circuit affirmed Callion's conviction and sentence on June 28, 2011. *Id.* at 888. Callion did not file a *certiorari* petition with the United States Supreme Court. (Gov't's Resp. to § 2255 Mem. at 3.)

**IV.    § 2255 Petition**

Callion timely filed this § 2255 petition on September 4, 2012.[5] (Mot. under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [1], hereinafter "§ 2255 Mot.")  In his § 2255 petition, Callion argues that his trial counsel was ineffective for failing to object to jury instructions that were inconsistent with the charges contained in the indictment, and for failing to adequately challenge his sentence. (Supp. Mem. for § 2255 Mot. [3], hereinafter "§ 2255 Mem.," at 7–8.)  In his Reply, Callion raises an additional ground for relief, arguing that his right to be free from double jeopardy was violated when he was charged, convicted, and sentenced for two offenses that contain the same elements—conspiracy to commit bank extortion, and attempted bank extortion. (Def.'s Reply to Gov't's Resp. to § 2255 Mem. [5], hereinafter "Def.'s Reply," at 2–3.) Each will be discussed below.

## **DISCUSSION**

Relief under 28 U.S.C. § 2255 "is available only in extraordinary situations, such as an

---

[5]    The court notes that Callion has satisfied § 2255(e), requiring him to file the § 2255 petition with "the court which sentenced him." 28 U.S.C. § 2255(e).  Though Callion was tried, convicted, and sentenced before U.S. District Court Judge David H. Coar for the Northern District of Illinois, Callion's case was reassigned to Judge Pallmeyer on August 2, 2011 by order of the Executive Committee. (*See* Exec. Comm. Order, *United States v. Callion*, No. 08-CR-549-1 (Aug. 2, 2011) [434].)

error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice," including where the sentence imposed by the court exceeded the maximum sentence authorized by law. *Blake v. United States*, 723 F.3d 870, 878–79 (7th Cir. 2013); *see* 28 U.S.C. § 2255(a). Generally, before a court may consider a § 2255 petition, the claims must have been raised and exhausted on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). A claim that has not been raised is procedurally defaulted, and a court may not consider it on habeas review unless the petitioner demonstrates both cause and prejudice. *Massaro*, 538 U.S. at 504. The only exception to this requirement is that a petitioner may raise an ineffective assistance of counsel claim in a § 2255 petition regardless of "whether or not the petitioner could have raised the claim on direct appeal." *Id.*

**I.      Claim 1: Ineffective Assistance of Counsel**

As his primary ground for relief, Callion argues that his trial counsel was ineffective: (1) for "not objecting to the Jury instruction that constructively amends the indictment" in violation of due process, and (2) for failing to successfully challenge the application of the firearms enhancement to his sentence. (§ 2255 Mem. at 7–8.) At the center of this second claim is Callion's objection to the sentencing court's consideration of evidence that firearms were discharged during the course of the crime despite the fact that Callion was acquitted of the firearms charge under § 924(c)(1)(A).

Under the two-pronged *Strickland* test, a party asserting ineffective assistance of counsel must demonstrate both that counsel's performance was deficient, and that the deficient performance prejudiced the defendant. *Strickland v. Washington,* 466 U.S. 668 (1984). The deficiency prong requires that the defendant demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. In evaluating this issue, a court "must be highly deferential," indulging "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Id.* at 689. The prejudice prong of

9

*Strickland* requires a showing that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

First, Callion claims that his trial counsel was ineffective for failing to object to a jury instruction that differed from the indictment. (§ 2255 Mem. at 7.) According to Callion, while Count III[6] of the indictment charged that he "used, and discharged a firearm, during and relation to the commission of a crime of violence, namely attempted bank robbery," the jury instruction "used the context of a conjunctive worded indictment." (*Id.*) This claim requires no attention: counsel's allege failure to object to the language of the instruction could not have prejudiced Callion, as the jury acquitted him on Count III.

Second, Callion argues that his trial counsel was somehow ineffective[7] because the district court wrongly imposed a "twenty-year mandatory minimum sentence required by § 924(c)(1)(A)(iii)" after "adopt[ing] the findings in the presentence report which includ[ed] a finding that Callion had discharged the firearm" that was unsupported by trial testimony. (§ 2255 Mem. at 7–8.) Citing the line of Supreme Court precedent beginning with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), Callion argues that his sentence violates due process because it included a firearms enhancement though the jury had acquitted him of Count III. (*Id.* at 8–9) (citing *United States v. Booker*, 543 U.S. 220, 233–34 (2005) (reaffirming *Apprendi* and holding that application of the Sentencing Guidelines is discretionary); *Harris v. United States*, 536 U.S. 545, 550 (2002) (*Apprendi* does not apply to facts increasing mandatory minimum), *overruled by*

---

[6] Callion identifies Count II here, but the court assumes that he intended to refer to Count III of the indictment, which contains the charge that Callion violated 18 U.S.C. § 924(c)(1)(A). (*See* Am. Indictment at 6.)

[7] In his reply, Callion argues that his trial counsel was ineffective "for not objecting to the enhancement" for the discharge of a firearm. (Def.'s Reply at 1) (citing *Glover v. United States*, 531 U.S. 198, 204 (2001) (concluding that an error that increases a defendant's prison sentence could establish "prejudice" under *Strickland*).)

*Alleyne v. United States*, 133 S. Ct. 2151 (2013)[8] ("[A]ny fact that increases the mandatory minimum is an 'element' that must be submitted to the jury."); *Apprendi v. New Jersey*, 530 U.S. 466 (2000).)

Callion is obviously troubled by his sentence, but this claim fails for a number of reasons. First, a sentencing challenge must be made on direct appeal. Because Callion did not raise the issue of the sentencing court's consideration of the firearms enhancement on direct appeal, any direct challenge to that enhancement is procedurally defaulted. Callion is free to argue, as he does here, that he received ineffective assistance of counsel at sentencing, but courts "are reluctant to allow prisoners to circumvent the rule against raising Sentencing Guideline arguments in collateral proceedings by recasting their Guidelines arguments as claims of ineffective assistance of counsel." *Allen v. United States*, 175 F.3d 560, 563 (7th Cir. 1999). Callion's ineffective assistance of counsel claim appears to do just that. The suggestion made (more directly in Petitioner's Reply memorandum) that Callion's attorney was ineffective for failing to object to the firearms enhancement (§ 2255 Mem. at 7–8; Def.'s Reply at 1) is flatly defeated by the record: Callion's attorney *did* object to the application of the firearms sentencing enhancement in both his sentencing memorandum and during the sentencing hearing, arguing that it would be unfair to apply the enhancement after the jury had acquitted Callion of the § 924(c) charge in Count III. (Def.'s Sentencing Mem. ¶¶ 31, 38–39; Sentencing Tr. at 13:9–23; *see* Gov't's Surreply to Def.'s Reply [6] at 1–2.)

Finally, even if a sentencing challenge were properly before the court, it would fail. Callion appears to believe that the court imposed a twenty-year mandatory minimum sentence for the charge in Count III on which he was acquitted, and that the court improperly concluded that

---

[8] Callion did file a motion to supplement on July 11, 2013, which provided this new authority. (Def.'s Mot. to Supplement [7].)

Callion himself discharged the weapon. Neither of these things is true. The record makes clear that the court sentenced him based solely on his conviction on Counts I and II (not Count III), and that in imposing a weapons enhancement, Judge Coar understood that Callion himself did not discharge the weapon. Nor was that enhancement inconsistent with the evidence; the jury may well have been reluctant to convict Callion of brandishing or discharging a weapon that he himself did not carry, but the evidence amply supports Judge Coar's conclusion that a weapon was discharged during the course of the crimes for which Callion was convicted.

The sentence Judge Coar imposed did not exceed the statutory maximums and did not implicate *Apprendi*. *See* 18 U.S.C. § 2113(a) (twenty years maximum); 18 U.S.C. § 371 (five years maximum). Where the enhancement would cause the guidelines range to exceed the statutory maximums, or, after *Alleyne*, the mandatory minimums, each "element" that increases the penalty beyond the statutory requirements must be proven beyond a reasonable doubt. Though Callion's sentence need not satisfy *Alleyne*,[9] here, the sentence meets the constitutional requirements set forth in both *Apprendi* and *Alleyne*. The probation officer calculated a guidelines range of 262 to 327, capped at 300 months because that was the statutory maximum for the two charges for which Callion was convicted. (PSR at 9, 12.) Neither of the charges carried mandatory minimums. *See* 18 U.S.C. § 371; 18 U.S.C. § 2113(a). There is no indication that, once he calculated the guideline range, Judge Coar believed that he lacked discretion or was bound to impose any mandatory minimum sentence. (*Cf.* 18 U.S.C. § 924(c)(1)(A) (mandatory minimum of 5 years for using of a firearm, 7 years for brandishing, and 10 years for discharging, to run consecutive to the underlying sentence). *Alleyne* held that "[a]ny fact that, *by law*, increases

---

[9] The Supreme Court issued its decision in *Alleyne* on June 17, 2013, nearly two years after the Seventh Circuit affirmed Callion's sentence on June 28, 2011. *Alleyne* is not retroactively available in § 2255 petitions, and therefore, does not apply to this case. *See, e.g.*, *Simpson v. United States*, 721 F.3d 875, 876 (7th Cir. 2013).

the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt," including "any fact that increases the mandatory minimum," but it did not restrict judicial discretion at sentencing within the statutorily prescribed sentencing range. 133 S. Ct. at 2155, 2163 (emphasis added). Callion's sentence of 240 months for Count II and 60 months for Count I to run concurrently, falls well within the statutory maximum of 300 months for Counts I and II. (Sentencing Tr. at 23:9–14.)

Nor is the application of the firearm sentencing enhancement unconstitutional. In *United States v. Watts*, 519 U.S. 148 (1997), the police discovered cocaine and two loaded guns in the defendant's home. 519 U.S. at 149. The defendant subsequently was convicted of possession of cocaine base with intent to distribute, but the jury acquitted him of the charge that he used a firearm in relation to a drug offense under 18 U.S.C. § 924(c). *Id.* at 149–50. Despite his acquittal, at sentencing, the court found by a preponderance of the evidence that the defendant had possessed the firearms in relation to the drug offense, and added a two-level increase to his base offense level. *Id.* (citing U.S. SENTENCING GUIDELINES § 2D1.1(b)(1) (Nov. 1995)). The Supreme Court upheld the defendant's sentence. Under 18 U.S.C. § 3661, the Court reasoned, "sentencing courts have broad discretion to consider various kinds of information," including "any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." *Id.* at 151–52 (citing 18 U.S.C. § 3661; U.S. SENTENCING GUIDELINES § 1B1.4 (Nov. 1995)). "[A]cquittal on criminal charges," the Court continued, "does not prove that the defendant is innocent; it merely proves the existence of reasonable doubt as to his guilt." *Id.* at 155 (quoting *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 361 (1984)). Because a criminal trial and sentencing are governed by different standards of proof, the Court concluded that "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." *Id.* at 156–57. The principle outlined in *Watts*—that a judge

may exercise broad discretion at sentencing, including consideration of factors not proven to a jury beyond a reasonable doubt—survives *Alleyne,* so long as the sentence remains within the statutorily-prescribed sentencing range for the crimes that have been proven beyond a reasonable doubt. *See Alleyne*, 133 S. Ct. at 2163 (emphasizing that the exercise of judicial discretion at sentencing, in the form of judicial factfinding, survives the Court's holding so long as it remains "within the range prescribed by statute") (quoting *Apprendi*, 530 U.S. at 481).

Section 2B3.2(b)(3)(A)(1) of the Sentencing Guidelines directs that the court add a seven level increase to the offense level where the defendant, in the course of committing extortion by force, threat of injury or serious damage, discharges a firearm. U.S. SENTENCING GUIDELINES § 2B3.2(b)(3)(A)(1). And section 1B1.3 of the Guidelines permits the court to consider "in the case of a jointly undertaken criminal activity . . . all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction . . . ." U.S. SENTENCING GUIDELINES § 1B1.3(a)(1)(B). In sentencing Callion, Judge Coar concluded, by a preponderance of the evidence, that Durham had discharged a .22 caliber handgun near the victim in order to scare and coerce him, that Gibbs accidentally discharged a shotgun in the vehicle used to transport the victim, that Callion "wanted" firearms to be used as part of the kidnapping, and that it was "foreseeable to [Callion] that guns would be used." (Sentencing Tr. at 4:16–5:12.)

The court's conclusions are supported by the evidence. Gibbs and Hoisington testified that the kidnapping plan included guns, and Callion told Gibbs he needed something big, which Gibbs interpreted to mean a big gun (Trial Tr., Nov. 17, 2009, *United States v. Callion*, No. 08-CR-549-1 [397], hereinafter "Trial Tr. 2," at 150:15–17; 151:2–14; 152:9–10); that Gibbs accidentally discharged a shotgun shell into the vehicle's center console (Trial Tr. 2 at 170:19–172:10; Trial Tr., Nov. 18, 2009, *United States v. Callion*, 08-CR-549-1 [398], at 318:11–21); and that Durham fired a .22 caliber handgun loaded with blanks at or near the victim's leg. (Trial Tr. 2

at 181:7–183:22; 197:5–10; *see also* Def.'s Sentencing Mem. ¶ 5 (admitting that the evidence presented at trial "suggest[ed]" that Callion was in the house at the time Durham fired the .22 caliber gun); Sentencing Tr. at 5:13–6:19 (parties agreed that Gibbs observed Durham discharge .22 caliber handgun near the victim's leg, and that Callion was on the first floor of the house when this occurred).) Under *Watts*, despite the jury's verdict acquitting Callion on Count III, the sentencing court was free to find by a preponderance of the evidence that a firearm was discharged in the course of attempted bank extortion, and to apply the firearms enhancement.

Callion's attempt to challenge the firearms enhancement fails. Trial counsel did object to the firearms enhancement, so any ineffective assistance claim on this score is baseless. Because there was no impropriety in the sentencing procedure or determination, Callion could not have been prejudiced.

**II.     Claim 2: Double Jeopardy**

As an alternate ground for relief, Callion argues that his Fifth Amendment right to not be subject to double jeopardy was violated when he was convicted and sentenced to conspiracy to commit bank extortion, 18 U.S.C. § 371, and attempted bank extortion, 18 U.S.C. § 2113, because, Callion asserts, these crimes required that the Government prove the same elements. (Def.'s Reply at 2–3) (citing *Blockburger v. United States*, 284 U.S. 299 (1932).)

As an initial matter, issues raised for the first time in a reply brief generally are considered waived. *See Wright v. United States*, 139 F.3d 551, 553 (7th Cir. 1998). In his § 2255 petition, Callion appeared only to challenge the application of the firearms sentencing enhancement, and did not raise any double jeopardy challenge against his convictions for conspiracy and attempted bank extortion. Nor did Callion raise the double jeopardy issue on direct appeal, and therefore, appears also to have procedurally defaulted the claim. *See Massaro*, 538 U.S. at 504; *Galbraith v. United States*, 313 F.3d 1001, 1006 (7th Cir. 2002).

And if the court were to reach the merits of this claim, it, too, would fail. Under *Blockburger*, two offenses are not considered to be the same, for purposes of double jeopardy, where "each of the offenses . . . requires proof of a different element." 284 U.S. at 304. Conspiracy to commit bank extortion and attempted bank extortion satisfy the *Blockburger* test: unlike attempt, conspiracy requires proof of agreement, while attempt, unlike conspiracy, requires proof that the defendant took a substantial step towards completing the offense. *See United States v. Rein*, 848 F.2d 777, 780 (7th Cir. 1988); *see also Callanan v. United States*, 364 U.S. 587, 593 (1961) ("It has been long and consistently recognized by the Court that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses."). Callion's Fifth Amendment right to not be subject to double jeopardy for the same offense simply was not implicated by his convictions for conspiracy to commit bank extortion and attempted bank extortion.

## **CONCLUSION**

The court grants Callion's motion [7] to supplement his § 2255 Petition with *Alleyne* as additional authority. Callion's trial counsel was not ineffective, either at trial, or at sentencing, however, and his double jeopardy claim is groundless. The § 2255 petition is dismissed. The court concludes that reasonable jurists would not differ on these conclusions and declines to issue a certificate of appealability.

ENTER:

Dated: May 21, 2014

REBECCA R. PALLMEYER
United States District Judge